Case number 19-4232, USA v. Jennifer Riccardi, oral argument not to exceed 15 minutes per side. Mr. Reiger for the appellant. Thank you. Good morning, your honors. May it please the court. I want to focus on two main issues in the oral argument today. The first one is whether the presumption of loss for gift cards was unreasonable and also implicated due process. The second issue is does the commission's 500 minimum loss under 2B.1.23 after the lie create a due process issue and whether the rule violates separation of power and does not deserve any deference under United States HABES. The facts of this case are pretty straightforward. The theft dealt with either cash or gift cards from greeting cards or things along those lines. But the most important fact of this case is that each gift card has stored and limited value and should have been readily determined for loss. In this case, the value of the vast majority of the cards were determined. Based on the number card, each card had an average value of about $35. Can I ask you, I see you making essentially two arguments. One argument is under the commentary itself, we should not have this $500 presumption because most of the gift cards are statutes. The other argument is the HABES argument that if it means what the government says it means, then the guideline commentary is invalid. I guess I have two questions. Am I correct in that dichotomy for your argument? And then number two, what is the argument for under the plain text of the commentary, why this presumption would not apply? Okay. First off, I think the second question is directly on point with what I'm arguing about the HABES. The first part of my argument is essentially related to one thing, and that is that the court did not simply allow Ms. Riccardi to rebut this presumption. Where in the guidelines do you read that the presumption is rebuttable? Where in the commentary? Well, that's the issue here. And that's why I wanted to point the court's direction to a 2015 case. It was United States versus, and forgive me if I don't correct this, say Lesnoskus. Okay. That dealt with a check scheme. And one of the things that the court did there, which I thought was important, was when they were talking about what a defendant can do under this situation. And I think that quote was pretty clear that in addressing the argument about a presumption, the $500, it stated the defendant should have the opportunity to rebut such a presumption. And that burden fell upon the defendant. In this situation, Your Honors, when you look at the access devices. And based on that one finding of fact, it went straight to the guideline application note and decided to take each card and times it by $500. It did not address, and this is where I think due process comes into play in this first argument. It did not address, it did not give reasoning or findings of fact to how the uncontroverted facts of this case did not rebut that $500 presumption. Go ahead. I'm confused though. Maybe I'm not following and maybe I didn't see this in your brief, but are you making, is this a procedural reasonableness argument now? Is that you weren't allowed to put evidence in the record about the, but my understanding is that for about half of the gift cards, there was an actual amount and they use the actual amount. For the rest of the gift cards, there was the $500 amount from the commentary applied. Are you saying that you weren't allowed to put in evidence of the actual value for the cards to which the presumption applied? The facts are a little different. It was about the vast majority of those cards were determined. I think there was about 1500 cards and about 1300 or so of them had the amounts, but none of those amounts, the actual amounts were applied. Every single card, the court times by $500. Okay. So my argument is basically this. We had those uncontroverted facts in the record where this is one of those situations. And I know that a lot of the cases say, it doesn't matter if this was impossible or against economic reality, but what difference here is, and it's very distinct, is that, okay, impossible things such as a sting operation or an insurance claim, or somebody is making a million dollar claim and there's only 500,000. That's not the situation here. This situation here had these stored value cards and they were either 25 or $50. I mean, when was the last time anybody ever got a $500 gift card? And the court did not make that distinction. The court knew those facts, knew that these, you cannot, like, I understand the commission splitting the baby in this application note here. I can understand, I think it's arbitrary where they pick that number and I don't know where they get the 500. But in this situation here, we knew those values and it's not one of those situations which are important. And I wanted to make this point about USD Murphy. One of the things that case said is that, okay, you know, we can still count impossible or even uneconomic losses, but it's very important. The defendant must have intended those losses, whether they could get them or not. In this situation, it's a crime, but what she intended was to get those gift cards or to get those cash. And I'm having a real big trouble making a distinction between these gift cards. Setting aside the constitution though, under the plain text of the relevant commentary, it says, and it is an unauthorized access device, loss includes or loss shall not be less than $500 per access device. We generally speaking, interpret the shall to be a mandatory command. So I get your point that it's against the economic reality for most of these gift cards, because they were $25 and $50. But if we're just following the plain text of the commentary, aren't our hands bound by that shall? And so I think that perhaps the better argument is that the commentary is somehow invalid rather than that the commentary simply doesn't apply here. Well, I'm not saying it doesn't apply. I'm saying that you should, or at least the court should have addressed or gave some reasoning or finding of facts why these facts did not reflect that presumption. I look at it as presumption. And in my research and doing this case, a presumption is basically this. Whenever you have a predicate fact that is found, then the consequences of that, you don't need to make any other findings of facts. But when you have that situation, a defendant under due process should have the opportunity or the judge's duty to make a finding of fact on a controversial sentencing fact. That all has to be decided by under a preponderance of the evidence standard. And in this situation, the preponderance of the evidence showed the value of those cards. And it wasn't one of those things where she had a credit card that gets you to a line of credit or more money. It wasn't a debit card that takes you to an account. It wasn't any of those things. This was a stored value card. And what this note did, if we shall follow that note, it led to an absurd situation here where essentially 10 times intent and loss was attributed to Ms. Ricardi. Is there an argument? It seems to me that there at least would be an argument for a variance downward because the $500 doesn't reflect the actual culpability in this case. Was there a downward variance argument made on that particular ground? I think there was a variance argument made on all the grounds. To be honest with you, in a sense, I didn't represent Ms. Ricardi. Could have been a stronger objection of these down below in the below court. But what I think the issue is when it comes to that is, the application notes discretionary. But really, when you come down to having a sentencing hearing and you have facts, the judge should not have just multiplied this by 10, even though... And what it leads to, in my opinion, is... What was in the record in front of him in terms of... We know that some of these cards have a value. They might have had a value on their face, whatever it was. Was the argument made to the judge that you should use these numbers as the actual loss and not use the presumption? You're saying that there was some due process argument that you weren't allowed to rebut the presumption. Were you not allowed to put the evidence in the record? The evidence was already in the record. I guess what I'm saying is that under due process, there should have been a finding or some reasoning by the judge as to why this guideline over the reality of the situation and the independent facts of this case, you should multiply her intended loss by 10 times. What about the argument that the commentary... They put in the $500 because oftentimes loss is going to be difficult to calculate. And so we're going to have a rule rather than a case-by-case standard. And the amount of the gift cards in this case, while there's 25 and 50, there's a whole host of other evidence that we don't actually know about. We don't know how many cards she actually stole. We know that there was 1,500 cards in her room at the time, but that also doesn't include the value of the actual greeting cards or other that she stole. So the commission thought a $500 minimum presumption per card was reasonable because of the difficulties involved in calculating loss in a lot of cases. Why wouldn't that be a reasonable reason why you would create a presumption like this, a bright line presumption? Well, I think there's a couple of reasons. I'm sure there's more than a reason because this rule, what it does is it really does away with the government's burden of having to prove loss at a sentencing hearing. And, you know, basically they have to come with one predicate fact. These are access device. Who cares about the facts? These things are only worth $25 or 50. There's no way she could ever get any of this stuff. It does not provide room for the defendant to rebut. It also makes a predetermination of a judge's finding of minimal loss, which I don't think the commission can do. That's a judge's role. And it even sets the bar of presumption for the appellate courts. This goes way too far for an application note. Now, if it was in the guidelines and went through Congress, went through public note, you know, comment and notice, it may be a different story. But it does way too much. It has a clear independent effect on what happened with this lady. And it's one of those real world situations. Okay, Mr. Rager, your time is running and you'll get your full rebuttal time. And we'll hear from the, we'll hear from the government now. Thank you. Good morning, your honors. May I please the court? My name is Laura Ford and I'm here on the behalf of the United States. The district court in this case correctly calculated the loss amount in this case by applying the $500 minimum provide for access. Miss Ford, can I ask you a quick question? I know there's another or this issue is coming up in another case. Is that right? Correct. This afternoon, your honor, as, as applied to credit cards that were stolen through skimming devices. Okay. So it's not a gift card case. It's a credit card case. Correct. Your honor. Okay. Okay. So that is before another panel this afternoon. And in this case, the court correctly calculated the loss amount by attributing the $500, $500 minimum per access device, which is fully consistent with this court's binding decision in moon. And this court's decision in Hevis does not undercut that in any way moon specifically considered whether there is a ability requirement and rejected that argument. And that's fully consistent with the plain language of the application note itself, which instructs that loss includes my understanding. And maybe I'm reading incorrectly, but my, I mean, I don't know how this cuts, but it seemed like in moon, the defendant was making a substantive reasonableness argument that you shouldn't apply the guideline or apply the $500 in, in his particular, his or her, I can't remember particular case. It didn't make sense or didn't adequately reflect culpability. I don't think that argument is being made here. And if it were, it would be that any challenge to the substantive reasonableness would be barred by the CLEA agreement waiver. And so what Riccardi is limited to challenging is the procedural reasonableness of her sentence as it relates to the loss calculation. Well, but I take it that she can also challenge whether as a blanket matter, the, the guideline, the, the commentary is invalid as applied in a, in a, say in a gift card case where, you know, the actual amount, some, some kind of rule that we could fashion that would say it's, it's just blanketly unreasonable to, or inconsistent with 3553A to apply this, this number, this $500 number, when we know that it's not correct for, for a lot of the, a lot of the cards. That challenge would be, she could make that challenge, right? Whether it's a good one or not, we, you know, it's up to us, but that one is not subject to the waiver, is it? Only as it relates to a procedural reasonableness challenge. If it falls under the substantive reasonableness claim as in a downward variance that she's precluded from challenging that. She had the opportunity to ask the court for a downward variance and in fact did so below, which is at page ID 478 to 80, and the court rejected that and gave her pretty close to a maximum guideline sentence given the extraordinary harm that her, her crimes had caused the postal service in this case. I didn't read, and I guess I didn't read, I, I, maybe I missed it in the sentencing transfer, but there was a request for a downward variance, but I'm not sure whether I saw that it was, that it was based at all on this idea that, that the 500 didn't adequately or, or overstated her, her culpability. Was that argument made below? No, your honor, that specifically wasn't. And I guess that ties into the appellant's argument that somehow she wasn't permitted to rebut this presumption about the $500 minimum. She had every opportunity to argue at that point in the case that it overrepresented her conduct. She could have said, oh, well, I only intended to steal, you know, gift cards that had a $25 value or a $50 value. Of course, that would have been factually inaccurate. And the government's in July where there was a starting balance for a visa gift card of $252. And it had a remaining balance of $198 and 40 cents. That was the government sentencing memorandum, which is record entry number 62. And it was, I believe it was attachment 10. But the amounts, I mean, I take it that there was, there was evidence of what these amounts are, at least some of the cards, we know the actual amounts. Why isn't, why isn't it the case that the government shouldn't have to, to prove or go with what the, or the court should go with what the actual number is? I mean, isn't culpability in a theft case tied to the amount that you actually stole? Well, the problem with the appellant's argument is that she is wholly ignoring the general rules for determining loss. She doesn't challenge the general rule under application note three, which instructs that loss is the greater of actual loss or intended loss. And so it's a district court's duty to determine both to see which one is higher. And what this does, this application note, it gives district courts a reasonable starting point in these difficult to determine cases. And it is a reasonable- But what was, but what was difficult to determine? I mean, the actual loss is we, if you know the amount on the gift card, that's the actual loss. If you know the amount on the gift card, that's also the intended loss, right? I mean, you can't, you can't intend to take more than what you actually took. If I take a hundred dollar bill, that's the actual and intended loss, isn't it? I mean, I don't, here we have an actual loss, we have an intended loss, neither one of which it gets to the $500 card number for, you know, 1,300 of these gift cards. So why wouldn't, why wouldn't you go with that? Why do we need the, why do you need the $500 deemed amount at all? The $500 minimum is a necessary starting point as a proxy for determining the seriousness of the fraud scheme. And in this case, it was a year-long scheme. And so when you're looking at just the $1,500, 1,500 cards that she possessed, that's the day that law enforcement intercepted her, but she had been stuffing pieces of mail in her lunch bag for over a year. And just the day that she was intercepted, she was seen taking 108 pieces of mail. So that's only a snapshot of what she had that day. She had $42,000 in cash that wasn't converted to loss. She had, she'd made numerous purchases and we attached some of the receipts for these purchases with gift cards. And some of those gift cards were definitely over $25 or $50. Can I ask you just, the strongest argument I see on the other side is, as I understand Stinson, which Havis was interpreting in our deference, we start by asking what's the plain language of the guideline. And we ask, is the commentary consistent with the plain language? And I'm struggling with, loss may be ambiguous in the abstract. It could include emotional loss. It could only be financial loss. But I'm struggling with seeing how loss can be interpreted to mean $500 automatic at the board. If I go to any dictionary that you could think of, you would never see that definition in the definition of loss. So why wouldn't we say then that this isn't an interpretive rule. It's not interpreting the definition of loss. It's a legislative rule. It's actually essentially creating a mandate, a requirement for sentencing that should be actually in the argument for why loss can be interpreted to mean $500 across the board for access devices. Well, as Judge Murphy noted, it was intentionally left broad. And certainly the same argument could be made about the original $100 minimum that applied way back in the 1987 guidelines, which were vetted through Congress. The $500 minimum is simply a starting point. It's not at all like the question that this court encountered with respect to 4B1.2 concerning the controlled substance offense definition and an application note adding a brand new offense that wasn't in the textual definition. We don't have a conflict in this case because it was intentionally left broad to encompass a wide variety of offenses. I mean, under our, we're supposed to ask, what's the plain language? If it's unambiguous, then we apply the unambiguous language. But even if it is ambiguous, the agency's interpretation has to be reasonable. It has to fall within the scope of the ambiguity. And I'm just struggling seeing how a $500 presumption falls within the scope of the ambiguity of the meaning of the word loss. And I mean, this case proves the point that under no interpretation would you say a $25 gift card has a loss of $500. I just, I'm struggling to see the connection there. I'm sorry. I think the focus, when you're looking at the $25 gift card, that's after the fact. But the point of what her intended loss was is when she's stealing these pieces of mail, she has no idea what the value is. She's trying to get the highest value card when she's grabbing these pieces of mail. But counsel, excuse me, this is Judge Daughtry. Looking at the language, for instance, in Lyles, which involved a credit card, and the court was leery of the $500 floor in that case with credit cards. But a credit card is certainly different from a gift card. As the court pointed out, the credit cards may have other illegal uses. And this can be, and they can be used to create false identities, which obviously concerned the commission when it changed the minimum. You can't use a gift card, for example, to steal somebody's identity. There's no way it has any other use except to take it into Subway and get a five foot whatever for $10. I mean, isn't this way out of that realm? No, Your Honor, this is not a situation where the calculation is so high that it's not rooted in reality. When you're applying it to the facts of this case, that it is a year long scheme. This is not something where there is no chance of success. This scheme was actually very successful. We happened to only get a snapshot of what was going on with respect to these 1500 gift cards that she possessed on the day that she was intercepted by law enforcement. But the application certainly in this respect is not plainly erroneous or internally inconsistent with the guideline text itself. What if the guideline instead of saying 500 had said $1 million for every access card is the presumed loss? Would you agree that that number would flunk Stinson's test and would be plainly erroneous? With respect to gift cards, I've never seen a gift card that would be that gift cards. So this is not something that's divorced from reality. In this case, it's not a capsule, but there are also $10 gift cards. And the only way you can use that card is to purchase something that costs less than $10. Your Honor, I would agree with you that there are varying amounts, but that same concern applies with respect to stealing credit cards. When a thief steals credit cards, the thief has no idea what the maximum spending amount is. Many of these credit cards have short spending lives because of how sophisticated the credit card company's fraud detection has become. They're canceled. But the point, excuse me, the point in Liles was that they can be used for something other than purchase. They can be used to extend your line of credit. They can be used to in identity theft cases. I mean, it's not going to impact beyond the gift card. It's not going to impact beyond the amount of the gift. And insofar as you're saying, well, this was a year-long scheme, et cetera, et cetera, you're now in danger of sentencing somebody for purely theoretical actions, which the common, I mean, which the sentencing guidelines would prevent. It's only supposed to be a sentence sufficient, but not greater than necessary to comply with the purposes of punishment set out in the statute. Not some theoretical action that she's been taking or would take or will continue to take or whatever. I mean, all she can do with a gift card is sell it for face value or use it herself for the amount on the card. That's it. Correct, Your Honor. And I see my time is almost up. I would conclude by saying that the court had the obligation to determine the intended loss, that applying this guideline was a reasonable application of the guideline in this case, in this factual context. And it did not lead to a plainly erroneous result. The defendant had the opportunity to ask for a downward variance, which is the appropriate remedy. And that was permitted by the plea agreement. And the district court disagreed with her request for a downward variance given the extraordinary harm that her Okay, great. Thank you, Ms. Ford. And we will hear rebuttal now. Thank you, Your Honor. I just want to get a little chance to address the Havis argument on this. Now, the special rule does not further define actual or intended loss. It goes much further than that. It tells you what it is. And that is for a judge to decide and for the government to prove. And one of the reasons why some of these notes can also deserve no binding or no deference is they violate the Constitution. And that is what this does. And what I said is because it doesn't make the burden of proof of loss. The government just has to go in and count the numbers. Instead, like you see in the argument here, we start saying theoretical stuff she's been doing this year long. Well, that's something that needs to be proved at a sentencing hearing. It's not something that can be just presumed based on an application note that never went through the gauntlet of Congress. And one thing too about this is there's a big disconnect between this rule and the overarching purpose of sentencing. There has to be a causal connection between what the defendant did or intended and the punishment or sentence imposed. And this does not provide that causal connection at all. I do want to mention a little bit about Moon. You know, there is a cursory mention of gift cards in the Moon case. But when I looked at that case, I think the main issue really was the appeal waiver. But the court did go into that substantive thing there, but it was a different issue. You know, Moon's argument was these are unusable, they were canceled. But the court rejected that and basically said, you know, insurance companies are quick to shut this down. You know, the statute on this says we got to be inclusive enough to include stolen, canceled cards. But that's not what point I'm making here. My point is, based on the nature of what was stolen, the intent to steal more is also impossible and economically unfeasible. And this rule just does away with that. And it was mentioned in the United States v. Lyles, they had a lot of concerns with this. And I did too. Because the commission did something on cloning telephones and all of a sudden they just picked this $500 number out of blue. How is that not arbitrary? This court, no other courts can determine what research and data they use to come up with that. But instead, that rule is there without going through Congress. And it seems like it's a shall rule, but to be honest with you, there should be room for presumption. This is just one of those cases where this rule under an application note has gone way too far. Do you have any other, do you have any out of circuit cases that have either accepted or rejected your Havis argument that you know of? Concerning gift cards, Your Honor, or just generally? Just generally, whether the $500 presumption is consistent with the guideline itself. Now, just the ones that you can generally see in the case law cited by the Sixth Circuit opinions. I mean, are there any cases anywhere that have invalidated commentary based on 3553A or due process or any of that? Well, what I will say is that when in United States v. Stinson, what the court said was, is if it adds to, modifies, or violates the Constitution, or is a clearly erroneous interpretation, deserves no deference. That's what this rule does. It actually fits all of those parameters. You might not say it adds, but when you have a loss guideline that says this is loss and just gives you a list of numbers to go up, then you have four pages of commentary interpreting those notes. Okay, thank you. Could I, excuse me, could I ask one question? Sure, yeah. Did you find any gift card cases? I looked and looked, Your Honor, and the closest one I saw to mention the gift card was Moon, even though that wasn't the issue in it. The issue was his credit cards. But no, I didn't find any gift cards. So, in that respect, we could be dealing with a case of first impression? Yes, Your Honor. Okay, thank you. Okay, thank you, counsel, for your arguments. And also, Mr. Rager, I noticed that you were appointed under the Criminal Justice Act, and we thank you for your service under that act.